UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

FILED
2022 DEC -9 P 4: 27
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CARLTON VOSE,<br>Plaintiff | :<br>: C.A. No.<br>: |
| v. | :<br>: |
| TANG & MARAVELIS, P.C.,<br>and BRIAN GOLDBERG,<br>Defendants. | :<br>: JURY TRIAL DEMANDED<br>:<br>: |

## COMPLAINT
### Legal Malpractice

Comes now, the Plaintiff, and in support of this Complaint states as follows:

## INTRODUCTION

The Plaintiff is an attorney licensed in the Commonwealth of Massachusetts. He has been in a legal battle with the Rhode Island Supreme Court and the Rhode Island attorney general's office since 2011, and this history with the Rhode Island legal community is extremely relevant to this case, as it provides context to the Plaintiff's claims in this Complaint.

The Plaintiff applied to the Rhode Island bar association and his application lasted more than four and a half years, from May 2010 to September 2014. Per Rhode Island Supreme Court Rules regarding admission to the bar, the attorney general of Rhode Island (then Peter Kilmartin) is a member of the committee

1

which evaluates all applications to the bar. The Plaintiff dated a woman who lived across the street from then-Attorney General Peter Kilmartin. Mr. Kilmartin had attempted to initiate a relationship with the woman on several occasions, while the Plaintiff was dating her. The Plaintiff confronted Mr. Kilmartin about his advances, and advised him that he was making a fool of himself. During his application to the Rhode Island bar association, the Plaintiff reported to the Rhode Island Supreme Court this conflict of interest that the Plaintiff had with then-Attorney General Peter Kilmartin, and asked that Mr. Kilmartin not be involved in the decision on his application to the bar. The Plaintiff's disclosure was made off-the-record, so as to avoid embarrassment for the people involved.

Mr. Kilmartin and the other members of the committee retaliated against the Plaintiff for his disclosure by attempting to have the Plaintiff falsely arrested for extortion by the Rhode Island State Police. The Rhode Island Supreme Court's committee made false accusations about the Plaintiff to the Rhode Island State Police. What the committee did not know at that time, was that the Plaintiff had recorded his disclosure. Upon learning that the Rhode Island Supreme Court's committee had called the Rhode Island State Police, the Plaintiff also called them, and advised them that he had recorded his disclosure, and that the Rhode Island Supreme Court's employees were lying to them. The Plaintiff played the recording for the Rhode Island State Police, who agreed that the committee was lying, and

they declined to get involved in what they called a "personal matter" between the Plaintiff and Attorney General Peter Kilmartin. The Plaintiff asked the Rhode Island Supreme Court to take disciplinary action against their employees, but the Rhode Island Supreme Court refused.

Prior to becoming attorney general, Peter Kilmartin was a police officer in the City of Pawtucket for 24 years. Following the Plaintiff's application to the Rhode Island bar, the Plaintiff - an attorney, with no criminal record - would be arrested four times by Peter Kilmartin's former police department, in 2015, 2016 (twice), and 2017; and charged with eleven crimes by Peter Kilmartin himself. The charges include elder neglect, obstruction, and obtaining money by false pretenses. Evidence indicates that the attorney general's office suborned perjury by police officers in the police department where Mr. Kilmartin worked for 24 years, in order to obtain fraudulent warrants for the Plaintiff's arrest, and to obtain a fraudulent conviction. The Defendants in this matter were in possession of that evidence.

The Plaintiff hired the Defendants to provide him with criminal defense services in three cases involving elder neglect, obtaining money by false pretenses, and obstruction. Defendant Goldberg represented the Plaintiff in the criminal matters on behalf of his employer, Defendant Tang & Maravelis, P.C. Plaintiff advised the Defendants of the circumstances described in the Introduction above at

the outset of the representation. Defendants represented the Plaintiff on a flat-fee basis which has been paid in full.

The Plaintiff and the Defendants amassed copious evidence of the Plaintiff's innocence during the four-year period between the Plaintiff's arrest in November 2015 and his trial in December 2019. The Plaintiff and Defendants also acquired evidence of criminal conduct by both the police officers involved, and the prosecutors involved. When the circumstances of these arrests are viewed in context with the Plaintiff's recently-concluded bar application scandal, the evidence overwhelmingly suggests a conspiracy between the Rhode Island Supreme Court and the Rhode Island attorney general's office to have the Plaintiff falsely imprisoned for uncovering criminal misconduct by the attorney general's office and Rhode Island Supreme Court employees during his bar application. The Plaintiff asked the Defendants to raise these very serious matters with the court during his elder neglect trial, however the Defendants did nothing.

Notwithstanding their knowledge and possession of all of this evidence, the Defendants offered almost none of our evidence at trial; made no attempt to disclose it to the trial justice; made no attempt to subpoena a single crucial witness; and looked the other way when confronted with evidence of serious police and prosecutorial misconduct.

An expert, who witnessed the Defendants' trial performance, was equally shocked by the failures of the Defendants. The trial court's head bailiff – who has observed hundreds of trials over his career, far more than the vast majority of attorneys in this country will ever observe – offered his condolences to the Plaintiff following the sentencing hearing when the Plaintiff was sentenced to five years in prison, simply because his walked around her neighborhood. As the Plaintiff was being led away in handcuffs, the bailiff offered the Plaintiff a handshake and stated, "Wow, that attorney really did nothing for you. I'm sorry, sir. You didn't deserve that verdict, and I wish you good luck."

The Plaintiff has been embroiled in a legal battle with the Rhode Island Supreme Court since 2011, and it is the Plaintiff's belief that no reasonable person would suggest that these prosecutions were not related to the Plaintiff's bar application and his ongoing efforts to hold Rhode Island Supreme Court employees responsible for their crimes.

Upon information and belief, the Defendants were less concerned with providing a competent defense for the Plaintiff, and were more concerned with the reputation of their firm and their professional relationships with the Rhode Island judiciary, and behaved as they did so as not to offend any Rhode Island court justices, which could hurt their chances of favorable rulings in their civil practice in the future. If this was in fact the case, the Defendants had an ethical obligation

to inform the Plaintiff of their reservations about providing the Plaintiff with the appropriate zealous defense, so that the Plaintiff could find another firm to represent him. But they did not. The Defendants took the Plaintiff's money, and then did almost nothing to present a true picture to the jury of what was going on here. The Plaintiff missed the last seven years of his mother's life; and she, his. The Plaintiff's remaining life has been irreparably damaged as a result of the Defendant's actions and inactions as described herein.

## JURISDICTION and VENUE

1. Plaintiff is a resident of the State of Florida.

2. Defendant Tang & Maravelis, P.C. is a professional corporation of attorneys organized in the Commonwealth of Massachusetts and doing business in Massachusetts, Rhode Island, Connecticut, New Hampshire, and Maine.

3. Defendant Goldberg resides in Rhode Island and practices law for Tang & Maravelis, P.C. out of their Rhode Island office and at all relevant times was an agent, representative, and/or employee of the corporate Defendant.

4. The Plaintiff has suffered damages that exceed the sum or value of $75,000, exclusive of interest and costs.

5. All of the events or omissions giving rise to these claims occurred in Rhode Island.

6. Based on the facts cited in paragraphs one through five, this court has original jurisdiction of the matters in dispute pursuant to 28 U.S.C. §1332 and venue in this court is proper pursuant to 28 U.S.C. §1391.

## FACTS

7. On or about August 25, 2016 the Defendants entered into a contractual agreement with the Plaintiff to perform legal services consisting of defense of criminal charges up to and including a criminal trial in the State of Rhode Island, Providence Superior Court, in Case Nos. P2-2016-2326A (elder neglect) and P3-2016-2655A (obstruction).

8. Case No. P3-2016-2655A (obstruction) was merged with Case No. P2-2018-0354A (obtaining money by false pretenses) and the Defendants agreed to represent the Plaintiff in that matter as well.

*Facts Related to "Elder Neglect" Charges*

9. In Case No. P2-2016-2326A (elder neglect), the Plaintiff went to trial in Rhode Island state court, Providence County from December 2nd through December 12th, 2019 on six felony charges of elder neglect.

10. The Defendants failed to provide adequate representation and legal services to the plaintiff in the elder neglect case in that they:

(a) failed to demonstrate adequate knowledge of elder law and failed to apply that law to the facts of the case;

(b) failed to disclose to the court, evidence of perjury by the arresting officer in obtaining an arrest warrant;

(c) failed to disclose to the court, evidence of a conspiracy between the arresting officer and the City of Pawtucket to have the Plaintiff falsely arrested;

(d) failed to disclose to the court, evidence of fraud by the arresting officer;

(e) failed to disclose to the court, evidence of criminal conspiracy and collusion between police and the attorney general's office to have the Plaintiff falsely arrested;

(f) failed to disclose to the court, evidence of prosecutorial misconduct;

(g) failed to impeach witness credibility;

(h) failed to call necessary expert witnesses;

(i) failed to disclose to the court, evidence of a conflict of interest between the Plaintiff and the attorney general and deputy attorney general;

(j) failed to disclose to the court, evidence that the attorney general and deputy attorney general had previously attempted to have the Plaintiff falsely arrested during his application to the Rhode Island bar association;

(k) failed to disclose to the court, evidence that the attorney general and deputy attorney general had previously falsely accused the Plaintiff of extortion;

(l) failed to disclose to the court, evidence that the attorney general's office had previously been caught submitting a fraudulent legal pleading to the Rhode Island Supreme Court for the purpose of defaming the Plaintiff's character;

(m) failed to disclose to the court, the kidnapping of the Plaintiff's mother;

(n) failed to disclose to the court, the illegal guardianship established over the Plaintiff's mother;

(o) failed to disclose to the court, violation of the alleged victim's right to receive visitors by blocking her family from visiting her;

(p) failed to disclose to the court, the mistreatment of the alleged victim by her captors, including the withholding of medication and the administration of mind-numbing chemicals to prevent the alleged victim from testifying on behalf of the Plaintiff;

(q) failed to submit a motion to disqualify the trial judge who is a personal friend and former coworker of Defendant Kilmartin and who was aware that the Plaintiff was attempting to have Defendant Kilmartin disbarred;

(r) failed to present to the court, evidence of the Plaintiff's innocence of the crimes with which he was charged;

(s) failed to familiarize themselves with the facts of the case;

(t) failed to call or subpoena necessary witnesses;

(u) allowed the state to enter medical records into evidence without authentication;

(v) failed to call a medical professional to interpret medical records that they allowed to be entered without authentication;

(w) were in possession of the above-cited evidence that they failed to introduce at trial; and

(x) refused to follow the Plaintiff's instructions regarding his defense.

11. During the criminal trial for elder neglect, the Defendants called only two lay-witnesses: the Plaintiff's brother and a friend.

12. The Plaintiff was convicted on all six counts of elder neglect on December 12, 2019 and was sentenced to five years in prison on each count.

13. Because of the conviction, the Plaintiff was not allowed to visit or speak to his mother following the trial which ended on December 12, 2019.

14. The Plaintiff's mother wrote a Victim Impact Statement in which she declared her son's (the Plaintiff) innocence and voiced her support for him. She pleaded with the State of Rhode Island to leave the Plaintiff alone; she pleaded with the court to give the Plaintiff no sentence; and she requested to be present at the trial to show support for the Plaintiff. The Defendants made no effort to ensure her presence at the trial and failed to object when the state did not make her available at the trial.

15. The Plaintiff's mother died on April 30, 2022. The Plaintiff was not allowed to see or speak to his mother before her death, and he will never be able to see her or speak to her again.

*Facts Related to "Obtaining Money by False Pretenses" Charge*

16. In Case No. P2-2018-0354A (obtaining money by false pretenses) the Defendants failed to provide adequate representation and legal services to the Plaintiff in that they:

    (a) failed to take action to move the case forward;

    (b) failed to communicate with the Plaintiff during the case;

(c) failed to file a *Franks* motion to traverse the arrest warrant and dismiss the case as requested by the Plaintiff;

(d) failed to even respond to the Plaintiff's request regarding paragraph 16(c) hereinabove;

(e) refused to follow the Plaintiff's instructions regarding his defense.

17. The Plaintiff was arrested for "obtaining money by false pretenses" on August 23, 2017 (more than five years ago), and the case is still pending as of the date of the filing of this Complaint.

18. For several years, the Defendants have been in possession of evidence of perjury and fraud committed by police officer William McCaughey who submitted a fraudulent affidavit and gave false testimony under oath in support of the charge of "obtaining money by false pretenses."

19. For several years, the Defendants have been in possession of evidence of perjury and fraud by police officer Kelly Boily who submitted a fraudulent affidavit and gave false testimony under oath before a Rhode Island state magistrate in order to obtain a warrant for the Plaintiff's arrest for "obtaining money by false pretenses."

20. The Plaintiff is an attorney and practices veteran's benefits law.

21. The Plaintiff advised the Defendants on numerous occasions that federal rules preclude him from practicing veteran's benefits law while felony

financial charges are pending against him, thus the urgency in resolving this charge.

22. The Plaintiff asked the Defendants on numerous occasions to file a *Franks* motion to traverse the arrest warrant and dismiss the case so that the Plaintiff could resume practicing veteran's benefits law.

23. The Defendants failed to even respond to the Plaintiff's requests.

24. The Defendants have never filed a *Franks* motion to traverse the arrest warrant, or any other type of motion to dismiss the case, which remains pending as of the date of this filing.

25. As a result of the Defendants' refusal to follow the Plaintiff's instructions, the Plaintiff has been unable to work for almost three years.

## COUNT 1
## Breach of Contract / Legal Malpractice

26. Paragraphs 1-25 are realleged herein.

27. The Defendants had a contractual duty to defend the Plaintiff and their actions and inactions as described hereinabove demonstrate a breach of that duty which has actually or proximately resulted in the damages suffered by the Plaintiff.

28. The plaintiff has suffered damages as a result of the Defendant's breach in the amount of $421,860.00 as a result of the loss of the Plaintiff's job with the federal government and his inability to work privately as a result of the pending charges against him.

## COUNT 2
## Negligence / Legal Malpractice

29.   Paragraphs 1-25 are realleged herein.

30.   Defendants had a duty to defend the Plaintiff in a manner consistent with the ordinary care and skill of an attorney practicing criminal defense and their conduct as described hereinabove constitutes a breach of that duty which has actually or proximately resulted in the damages suffered by the Plaintiff.

31.   The plaintiff has suffered damages as a result of the Defendant's breach in the amount of $3,379,402 as a result of the loss of the Plaintiff's job; the loss of his pension; the loss of retirement savings; the loss of social security benefits; the loss of health care benefits; and damage to credit.

WHEREFORE, the Plaintiff requests a judgment against the Defendants in the amount of $3,379,402 (three million, three hundred seventy-nine thousand, four hundred and two dollars) plus an award of costs, interest, and such other relief that the Court may deem appropriate.

/es/ *Carlton Vose*

Carlton Vose, Pro Se
Mass BBO #680548
11067 Percheron Drive
Jacksonville, FL 32257
carltonvose@gmail.com
904-755-4641